**RANNEY–BROWN DISTRIBUTORS, INC., Plaintiff,**

v.

**E. T. BARWICK INDUSTRIES, INC., and Walter E. Heller & Co., Defendants.**

**No. C–1–74–352.**

United States District Court, S. D. Ohio, W. D.

May 5, 1977.

**4**

Jon M. Sebaly, Dayton, Ohio, for plaintiff.

Murray S. Monroe, Cincinnati, Ohio, for defendant, Barwick.

James W. Farrell, Jr., Cincinnati, Ohio, for defendant, Heller.

## OPINION AND ORDER

DAVID S. PORTER, District Judge:

This is an antitrust case which is presently before the Court on Defendant's motion to compel plaintiff to produce documents (doc. 47). There is a memorandum contra (doc. 49) and a reply (doc. 51). The defendant resists demands that it produce (1) the minutes of a November 12, 1974 meeting of the plaintiff's Board of Directors, along with attachments thereto, (2) a memorandum entitled "History of Ranney-Brown" allegedly prepared by plaintiff's president, Nelson C. Ranney, in the course of obtaining legal advice from the firm of Frost & Jacobs concerning potential antitrust claims against Barwick, (3) and certain handwritten documents (or documents containing handwritten notations) previously produced for defendants' inspection. As to the first two items, the plaintiff claims an attorney-client privilege. Plaintiff resists production of the third item(s) on the grounds of undue burden and harassment.

Although the minutes of the November 12, 1974 board meetings, as well as information similar to that allegedly contained in the "History of Ranney-Brown" was requested as early as March of 1975, neither the minutes nor the "History" were produced until February, 1977. When the minutes were produced in February, counsel for defendants reviewed the plaintiff's minutes,

noted the minutes of November, 1974, and requested a copy of every page of the minute book (Hill affidavit, ¶ 9). Defendant's counsel also inspected and designated for copying the "History of Ranney-Brown" (Hill affidavit, ¶ 9). Upon seeing that defendants' counsel had inspected and designated for copying the "History," plaintiff's counsel said that he would not copy it, and took it from the room. At the same time, plaintiff's counsel was asked for the original of certain handwritten documents of which weak copies had been produced.

Plaintiff's counsel indicated that he would look into that (Hill affidavit, ¶ 9).

Counsel for plaintiff contends that the board minutes and "History" were produced inadvertently, and that the disclosure was made without the consent of Nelson Ranney, plaintiff's president. Plaintiff contends that the November minutes are privileged because they contain a record of discussions between the Board and its trial attorney concerning the status of the present action. Plaintiff contends that the "History" was prepared by plaintiff's president, at the request of its former trial counsel, in anticipation of the present lawsuit. Plaintiff's counsel argues that only the client can waive the privilege and that to support a finding of waiver, there must be evidence that the client intended to waive the privilege, citing *Connecticut Mutual Life Insurance Co. v. Shields,* 18 F.R.D. 448 (S.D.N.Y.1955).

Plaintiff also argues that the Board minutes are not relevant. Plaintiff admits that the minutes contain a discussion between client and attorney concerning the means by which plaintiff might finance the present lawsuit. Plaintiff argues that its method of financing litigation is not relevant to the issues in this case, and that the minutes do not contain information reasonably calculated to lead to the discovery of admissible evidence (doc. 49).

Defendant contends that the attorney-client privilege was waived by disclosure, even assuming that disclosure was inadvertent. In addition, Barwick contends that the amount of plaintiff's remaining assets are relevant to Barwick's counterclaim on an account. The Court granted an oral motion for judgment on this counterclaim at pretrial on April 18, 1977, based on the disclosure in the statement of issues that plaintiff had no defense thereto. Barwick contends that it "wishes to review the circumstances surrounding plaintiff's hiding of all its liquid assets at a time when plaintiff's officers were aware of an insolvency in excess of $1,000,000" (docs. 47 and 51 at p. 5).

Ordinarily, Rule 26 will not permit the discovery of facts concerning a defendant's financial status, or ability to satisfy a judgment, since such matters are not relevant, and cannot lead to the discovery of admissible evidence. However, having recovered judgment, Barwick may execute on its judgment and inquire as to the escrowed funds in proceedings in aid of execution pursuant to Rule 69. The judgment creditor is permitted discovery in order that he may find out what assets exist or have been fraudulently transferred. In addition, he may use the discovery mechanisms provided under state practice. Fed.R.Civ.P.Proc. 69; 12 Wright and Miller § 3014 (1973). A claim of privilege cannot be used as a means to conceal assets to prevent execution of judgment. *G-Fours, Inc. v. Miele,* 496 F.2d 809 (2d Cir. 1974) (proceeding in District Court in aid of execution pursuant to Rule 69(a) and N.Y. C.P.L.R. §§ 5223, 5224). *See also, Monticello Tobacco Co., Inc. v. American Tobacco Co.,* 12 F.R.D. 344 (S.D.N.Y.1952) (no attorney client privilege with respect to questions relating to attorney's possession of property held for the account of the judgment debtor-applying New York Civil Practice Act § 353). However, there is no need to rule on this matter at the present time, because no proceedings in aid of execution have been instituted. Such proceedings may or may not be instituted.

With respect to the "History," it appears that it was mingled with other documents in the custody of plaintiff's counsel, and there is no indication that any special effort was made to keep the "History" in a separate file with special protections. One Court has ruled that under these circumstances the risk of insufficient precautions

rests with the party claiming the privilege. *U. S. v. Kelsey-Hayes Wheel Co.,* 15 F.R.D. 461, 464 (E.D.Mich.1954). The *Kelsey-Hayes* Court ruled that a claim of inadvertent disclosure will not preclude discovery, despite the fact that the files were voluminous and that counsel did not know that privileged documents were in the files. *Id.* at 465.

In *Underwater Storage, Inc. v. United States Rubber Co.,* 314 F.Supp. 546, 549 (D.D.C.1970), the Court stated:

> The plaintiff turned over to his attorney the documents to be produced. This letter was among them. The Court will not look behind this objective fact to determine whether the plaintiff really intended to have the letter examined. Nor will the Court hold that the inadvertence of counsel is not chargeable to his client. Once the document was produced for inspection, it entered the public domain. Its confidentiality was breached thereby destroying the basis for the continued existence of the privilege.

The language of *Underwater Storage* appears to be more directly aimed at the requirement of confidentiality, as opposed to a question of waiver.

*Duplan Corporation v. Deering Milliken, Inc.,* 397 F.Supp. 1146, 1191 (D.S.C.1975) also contains language to the effect that a party may inadvertently waive the attorney-client privilege by the voluntary production of otherwise privileged communications due to a failure to examine documents before their production.

On the other hand, *Connecticut Mutual Life Insurance Co. v. Shields,* 18 F.R.D. 448 (S.D.N.Y.1955), on facts similar to the present case, rejected a claim that inadvertent disclosure waived the privilege. The court noted that only the client can waive the privilege and that to support a finding of waiver, there must be evidence that the client intended to waive it, citing § 354 of the N.Y. Civil Practice Act and cases applying § 354.

The Court rejects *Connecticut Mutual* to the extent that it requires evidence of the client's specific intent to waive the privilege. The *Connecticut Mutual* Court ruled as it did pursuant to § 354 of the N.Y. Civil Practice Act, which does not apply in this case. Fed.R.Ev. 501. Several of the cases cited by the movant distinguish it on that basis. However, it is also important to note that the cases cited by the movant arose from circumstances in which the movant or some third person had copies or otherwise *knew* the contents of the privileged communication. In *Kelsey-Wheel, supra,* the movant had obtained a copy of a privileged letter and sought to compel the non-movant to admit its genuineness. In *D'Ippolito v. City Service Company,* 39 F.R.D. 610 (S.D.N.Y.1965), the privileged documents had been turned over to a non-party for inspection. In *Underwater Storage, supra,* the documents had been turned over to the movant, who had custody of them, and who sought to compel the client to answer questions involving them. In all the above cases, it was clear that the confidentiality of the communications had ceased. The facts involved in *Duplan, supra,* are unclear. However, that case appears to have invoked the rule that a voluntary waiver of the privilege as to one or more documents waives the privilege as to all communications between the same client and attorney on the same subject. Under such circumstances the Court noted that the fact that the client did not intend to waive the privilege as to some documents or communications was not determinative. The Court's ruling was a logical extension of the rule relating to voluntary testimony of the client as to some, but not all, of otherwise privileged matters. See 8 Wigmore, Evidence § 2327 (McNaughton rev. 1961). Such selective disclosure is deemed unfair.

It is not clear from the affidavits and other papers submitted that the proposed discovery seeks the production of a document, the contents of which are known (*i.e.,* that are no longer confidential, because notes were taken by the movant during inspection) or whether the discovery seeks the production of a document only the existence of which became known, by virtue of inadvertent production, in order to find out what it says. In the latter case, it is not so clear that confidentiality has been lost. Nor is it clear how the partial disclosure or "unfairness" rule discussed in *Duplan* applies.

An *in camera* production of the "History" is ordered, unless waived, so that the Court

may determine if the document is a privileged document. In addition, the matter will be set for a hearing on the 9th day of May, 1977, at 11 O'clock A. M., for the purpose of determining if the confidentiality of the document was lost by inadvertent production.

 With respect to that branch of the motion directed toward the production of the originals of certain handwritten notes previously produced and copied by the plaintiff, the Court agrees that the copies are poor. However, such documents are hard to copy. The plaintiff offers the alternative that defendants undertake a search of plaintiff's files to locate the originals rather than put the plaintiffs to the burden of searching the files a third time. This would appear to be a reasonable alternative, and it is so ordered.