## In re CHICKEN ANTITRUST LITIGATION.

### Civ. A. No. C–74–2454–A.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 22, 1982.

## ORDER

O'KELLEY, District Judge.

Presently pending before the court are two motions by KFC[1] and a stipulation filed by KFC and the Settlement Administration Committee modifying the two previous motions. KFC is a putative class claimant in the settlement fund established in this protracted antitrust litigation. In KFC's first motion, KFC moved for clarification, asking the court to rule that KFC was entitled to recover as a member of two settlement classes, Class III(b) and Class IV, made up respectively of (1) restaurants and fast food franchisees, and (2) wholesale distributors. In the same motion, KFC asked the court to rule that KFC had opted out of the class settlement in the event the court should find that KFC was not entitled to class membership because of affiliation with or ownership by a defendant. The second motion by KFC was a 60(b) motion, filed after final judgments were entered on March 19, 1980 setting up the settlement

1. "KFC," as used in the two motions, is a collective term referring to KFC Corporation and its wholly owned subsidiary, KFC National Management Company.

classes. Final judgments were entered before the court had ruled on the KFC motion for clarification. KFC subsequently filed the 60(b) motion for relief from the final judgments, apparently having read the judgments to deny class membership to KFC.

On June 11, 1981, this court entered an order addressing the motion for clarification and the 60(b) motion. In that order, the court concluded that the 60(b) motion was premature since its resolution would depend upon a ruling on KFC's class status. The court accordingly declined to rule on the 60(b) motion. The court declared, "KFC unquestionably is not a member of Settlement Class III(b)." The court went on to say, however, that the court would defer ruling on whether KFC had effectively opted out until such time as the parties had fully briefed the issue.

KFC and the Settlement Administration Committee have recently filed a stipulation addressing the status of KFC. The stipulation narrows the issues presented by the two KFC motions to the question whether KFC Corporation and two of its subsidiaries may participate in the settlement as members of Classes III(b) and IV. In the stipulation the parties agree that KFC Corporation (KFC) is a wholly owned subsidiary of defendant Heublein, Inc., that KFC National Management Company (Management) is a wholly-owned subsidiary of KFC, and that Commonwealth Food Services, Inc. (CFI), now dissolved, was a wholly owned subsidiary of Management. The parties agree for the purposes of the motions that KFC, Management, and CFI filed timely proofs of claim to participate as members of Classes III(b) and IV, and have elected not to opt out of the settlement. KFC and Management seek to participate in the settlement fund as purchasers of broilers sold to consumers through Kentucky Fried Chicken stores owned and operated by KFC and Management.[2] CFI sets forth a claim to participate as a wholesale distributor,[3] stating that during the relevant period,[4] CFI purchased to resell at wholesale approximately 6,638,590.23 pounds of broilers from processors other than defendant Heublein, Inc. Finally, the parties agree that certain documents which were attached to the response of the settlement committee to KFC's 60(b) motion pertaining to the corporate relationships among the three claimants are accurate. The court will treat this stipulation as a modification of the motion to clarify. The court will therefore grant the motion to clarify and will determine the eligibility of the claimants to participate.

■ In the final judgments entered March 19, 1980, this court restricted the right of any defendants or defendant affiliates to recover. The restriction stated:

(1) all named party defendants, their affiliates, and subsidiaries, to the extent that they are not legally independent and autonomous from their parent-defendant or affiliate-defendant, shall be excluded from participating as claimants under any of the settlement classes herein;

(2) all legally independent and autonomous subsidiaries and/or affiliates of all named defendants herein not expressly excluded from settlement Classes I–IV may participate as either direct purchaser claimants under settlement Class V or as wholesaler-distributor claimants under settlement Class IV as appropriate whether or not they are controlled or owned in whole or in part by their parent-defendant or affiliate-defendant;

(3) no legally independent and autonomous subsidiaries and/or affiliates of all named defendants herein who are permitted to participate as claimants in these settlements under part (2) *supra* shall be permitted to recover for purchases from their parent-defendant or affiliate-defendant.

Accordingly, only defendant-affiliates or defendant-subsidiaries that can show that

---

2. Class III is comprised of hotel, motel, restaurant, fast-food franchisee, and institutional feeder claimants.

3. Class IV is made up of wholesale distributors.

4. The relevant period was January 1, 1970 through October 31, 1977.

their corporation is "legally autonomous and independent" of the defendant parent/affiliate may participate as claimants. This restriction was imposed to preserve the settlement fund for truly adverse entities who were harmed by the alleged wrongdoing by defendants and to prevent reduction of the settlement fund by defendants through their subsidiaries and affiliates in violation of obvious intent of the settlement agreement. Since all three claimants here are subsidiaries of defendant, Heublein, Inc., the court is now called upon, for the first time, to define its "independent and autonomous" standard.

In the court's view, factors discussed in cases considering whether to disregard the corporate fiction are also relevant to the question whether a subsidiary is sufficiently independent of its parent to warrant permitting the subsidiary to participate in a settlement fund partially contributed by its parent. In *Markow v. Alcock,* 356 F.2d 194 (5th Cir.1966), in discussing whether to disregard the corporate fiction, the court listed these factors:

(1) are the formal legal requirements observed; (2) is the "subsidiary" adequately financed or does the "parent" furnish the capitalization...; (3) by whom are the salaries and expenses paid; (4) do the directors of the "subsidiary" act in the independent and primary interest of the "parent," (5) are the two operations so integrated through the commingling of funds, interactivities and common direction and supervision that they should be considered as one enterprise; and (6) generally, is one corporation so organized and controlled and its business conducted in such a manner as to make it merely an agency, instrumentality, adjunct or alter ego of the other?

*Markow v. Alcock,* 356 F.2d 197–98 (citations omitted). *See also Andrew Martin Marine Corp. v. Stork-Werkspoor Diesel,* 480 F.Supp. 1270 (E.D.La.1979) (applying the *Markow* factors) and *Johnson v. Warnaco, Inc.,* 426 F.Supp. 44 (S.D.Miss.1976) (applying similar factors derived from *Fish v. East,* 114 F.2d 177 (10th Cir.1940)). In *Luckett v. Bethlehem Steel Corp.,* 618 F.2d

1373 (10th Cir.1980), the court cited the following factors in deciding whether to disregard the corporate status of a subsidiary:

(1) the parent owns all the stock; (2) both have common directors and officers; (3) the parent finances the subsidiary; (4) the parent causes the subsidiary's incorporation; (5) the subsidiary has grossly inadequate capital; (6) the parent pays salaries or expenses of the subsidiary; (7) the subsidiary has no business except with its parent or subsidiary corporation or no assets except those transferred by its parent or subsidiary; (8) directors and officers do not act independently in the interests of the subsidiary; (9) formal legal requirements of the subsidiary such as keeping corporate minutes are not observed; (10) distinctions between the parent and the subsidiary and subsidiary and its subsidiary are disregarded or confused; (11) subsidiaries do not have full boards of directors.

618 F.2d at 1378, n. 4.

■ While many of the factors outlined in these cases are also probative on the question of independence and autonomy of a subsidiary from its parent, the court will require a considerably lesser showing for its "independent and autonomous" standard than is required when disregard of the corporate entity is sought. The court strongly feels that only truly adverse entities should be permitted to participate in the settlement fund. Otherwise, the settlement fund could be dissipated in violation of the obvious intent of the settling plaintiffs, and future antitrust settlements would be discouraged. Furthermore, in the view of the court, the burden of proof on the "legally independent and autonomous" standard belongs upon the subsidiary corporation seeking to recover as a claimant. Generally, the burden of proof of disputed facts rests on the party affirming the existence of the facts and claiming rights and benefits from their existence. *Marcum v. United States,* 452 F.2d 36 (5th Cir.1971). In this case, the subsidiaries seeking to recover as claimants are in the better position to present to the

court facts showing their independence from defendant Heublein, Inc., and they are the parties seeking to participate in the settlement fund partially set up by their parent corporation. Therefore, the court finds that the burden rests properly on the subsidiaries to show their independence from the parent.

In the June 11, 1981 order, the court declared without discussion that KFC was not a member of settlement Class III(b). That order dealt with "KFC" in the aggregate, which was comprised of KFC and Management. The order did not address KFC's claim to membership in Class IV, nor were the claims of CFI discussed in that order.[5] The court is not inclined, however, to alter its previous ruling excluding KFC and Management from participation in Class III(b). Furthermore, since the court finds that KFC, Management and CFI have failed to show that they are legally independent and autonomous of parent/defendant Heublein, Inc., none may recover as claimant members of either Class III(b) or Class IV.

 The parties stated in their stipulation that the documents labeled Exhibits D through I and attached to the Settlement Administration Committee's brief in opposition to the 60(b) motion were authentic. The court has studied these documents and finds that they reveal that the relationship among Heublein, Inc., KFC, and Management was not sufficiently autonomous and independent to permit these subsidiaries to recover as claimants. The stipulation shows that each subsidiary was "wholly owned." KFC had been publicly owned until it was acquired by Heublein in 1971. After the acquisition, Heublein owned all of the KFC stock. While full ownership alone would be insufficient to show that the subsidiaries were not independent, it is a factor highly indicative of control by the parent. See Luckett v. Bethlehem Steel Corp., supra. Furthermore, the exhibits reveal that several officers and directors of defendant Heublein, Inc., were also officers and directors of KFC, Management, and other subsidiaries of Management. These "shared" officers and directors raise a strong inference of domination by the parent and indicate the "common direction and supervision" cited as a relevant factor in Markow v. Alcock, supra. The shared directors and complete ownership alone would convince the court that for purposes of claiming a portion of a settlement fund partially contributed by defendant Heublein, Inc., KFC and Management are too entangled with Heublein to permit their participation. The court need not rest its decision on these factors alone, however. The documents filed by the Committee show that Barry Rowles and Mike Miles, officers and directors of KFC and Management, reported to Hicks Waldron, president of Heublein. This indicates control and supervision of KFC by Heublein, Inc. Exhibit D shows that in answer to a question concerning frequency of meetings of the boards of directors and whether minutes were maintained, the KFC legal department supplied this response: "Meetings of the boards of KFC and Management seldom, if ever, were held. Necessary action was taken by consent resolution." This failure to hold board meetings indicates a disregard of the formality of the corporate entity, a factor mentioned in both Markow v. Alcock, supra, and Luckett v. Bethlehem Steel Corp., supra and, further, that the boards were not actual functioning bodies. Another document also demonstrates an intermingling of authority. A memorandum dated July 9, 1979, from David M. Stigler, Assistant General Counsel for Heublein, Inc., to Michael J. McGraw, Vice-President/General Counsel for KFC, clearly shows cooperation between the legal departments of KFC and Heublein in directing their franchisees to prepare claims in this litigation. While the court is hesitant to read too much into a single memorandum, the conclusion that an identity of interest existed is inescapable. In short, several items of information supplied to the court show that free interchange of information between Heublein and KFC oc-

5. CFI's claims were not raised in the initial motion by KFC.

curred. The court can only conclude, in the absence of any evidence which would demonstrate independence, and in the face of several items indicating control by Heublein, that neither KFC nor Management are independent or autonomous of Heublein, Inc., for purposes of participating in the claimant universe.[6]

Where CFI is concerned, there is more of a close question since the court has been supplied with only scant information about its status. CFI is a wholly owned subsidiary, however, and its kinship to Heublein, Inc., derives from two other wholly owned subsidiaries whose status the court has found non-autonomous. Therefore, in view of the failure of CFI to come forward with evidence to show its legal independence and autonomy from Heublein, the court will find CFI barred as a claimant as well.

In summary, the court previously ruled that the 60(b) motion was premature. By the terms of this order and the stipulation filed by the parties, it is now moot and will therefore be denied. The KFC motion for clarification as modified by the stipulation is granted. The court holds that neither KFC, Management nor CFI are entitled to participate in the Settlement Fund.

---

**6.** The court expresses no opinion whether the corporate status of the subsidiaries should be disregarded, and is only deciding that the subsidiaries are so closely related to a defendant in this action that they are barred from recovering as plaintiffs. The court would presume that a greater showing of inter-relation and intermingling than was made for this purpose would be required to cause disregard of the corporate entity for other purposes.