**PARKWAY GALLERY FURNITURE, INC., Plaintiff,**

v.

**KITTINGER/PENNSYLVANIA HOUSE GROUP, INC. d/b/a Pennsylvania House, Defendant.**

**ROSE FURNITURE COMPANY, Plaintiff,**

v.

**KITTINGER/PENNSYLVANIA HOUSE GROUP, INC. d/b/a Pennsylvania House, Defendant.**

**Nos. C–86–674–D, C–86–675–G.**

United States District Court, M.D. North Carolina.

May 8, 1987.

See also, D.C., 116 F.R.D. 363.

William Kearns Davis, Richard V. Bennett, James R. Fox, Winston-Salem, N.C., Norman B. Smith, Greensboro, N.C., for plaintiffs.

James R. Hubbard, David C. Smith, Winston-Salem, N.C., for defendant in both cases.

Ralph J. Savarese, Margaret Zwisler, Howrey & Simon, Washington, D.C., for defendant in No. C–86–674–D.

George L. Little, Jr., Daniel R. Taylor, Jr., Winston-Salem, N.C., for defendant in No. C–86–675–C.

## ORDER

RUSSELL A. ELIASON, United States Magistrate.

Defendant seeks a protective order requiring plaintiffs to return twenty documents allegedly inadvertently produced

during a document exchange and an order precluding plaintiffs from using these documents at trial. Plaintiffs resist the motion and further move to compel the production of five additional documents claiming that the subject matter of them is related to the twenty documents already produced and, therefore, any protection or privilege has been waived as to them as well. The parties have presented the matter through affidavits of counsel. At oral argument, counsel for plaintiffs professed interest only in document PH 5644 which is a September 7, 1982 letter to Edwin Roberts of Pennsylvania House from its general counsel providing confidential legal advice regarding the current state of antitrust resale price maintenance enforcement. Plaintiffs agreed to return the other documents to defendant, but still seek the five additional documents which they claim are tied to the Roberts letter.

Defendant contends that production of the Roberts letter was unintentional, that it had taken adequate precautions to protect against disclosure, and that it did not waive its attorney-client privilege to that letter. Plaintiffs argue that the highly probative nature of the document and the misuse of document production by defendant support a finding of waiver. In addition, plaintiffs request the Court to find waiver based upon their contention that defendant has forfeited its attorney-client privilege by attempting to use an attorney to carry out an illegal or fraudulent scheme.

Disputes over whether the attorney-client privilege has been waived through inadvertent production of the documents or on the basis of the fraud or crime exception to the privilege often involve contested facts necessitating an evidentiary showing. Generally, the proponent or party claiming rights or benefit of an assertion bears the burden of establishing his contention. *In re Chicken Antitrust Litigation*, 560 F.Supp. 1006, 1008 (N.D.Ga.1982); *see Mashpee Tribe v. New Seabury Corp.*, 592 F.2d 575, 589 (1st Cir.), *cert. denied*, 444 U.S. 866, 100 S.Ct. 138, 62 L.Ed.2d 90 (1979). Because defendant claims its disclosure of the document was inadvertent, it will have the burden of establishing that fact. Because plaintiffs assert the Roberts letter was written in furtherance of an illegal or fraudulent scheme, they have the burden of initially developing that issue.

### Findings

1. The document production in issue took place in November, 1986. Because of the volume of documents at issue, defendant insisted the production be at defendant's place of business. Plaintiffs, while not satisfied, reluctantly agreed.

2. Prior to the document production, defendant spent two weeks using one attorney and three assistants, working ten to twelve hours a day, going through 100 file drawers of documents. A large number of these documents were files of correspondence with defendant's dealers which did not contain much sensitive material. When the legal assistants checked a file, they were directed to refer all questionable matters to an attorney for final decision. Those files which were known to be sensitive were personally reviewed by an attorney who was then double-checked by a legal assistant. The documents in question came from files in Mr. Roberts' office and were considered sensitive. In addition, once the file search started, new documents were not permitted to be filed in the drawers.

3. The law firm representing defendant has a large Washington, D.C., office. When a case involves massive document production, such as the instant one, the procedure of this firm, or at least the lead attorney in this case, is to have opposing counsel select or identify documents which are to be produced and then have them shipped to the law firm office for copying. This procedure is employed for two reasons. First, the firm usually has superior copying facilities than are available at most document sites. Second, this procedure permits the attorney to conduct a second review of any document which is to be produced in order to determine whether it is privileged or protected.

4. Shortly before the document production took place, defendant's lead counsel had major surgery and turned the matter over to her assistant. The assistant talked to plaintiffs' attorney about his reservations over having the documents copied locally and indicated he wanted them shipped to Washington for copying. Defendant's lead counsel had previously discussed this preference with plaintiffs' counsel. At that time, plaintiffs' counsel did not raise an objection. However, upon arriving at defendant's premises, plaintiffs' attorneys felt overwhelmed by the document presentation and began to suspect the confusion and disarray was the result of a "document dump." Notwithstanding, the Court determines that defendant produced the files as they were kept for business use. Much of the confusion resulted from the fact that dealer files contain an extreme amount of irrelevant transaction material and, therefore, created an impression that defendant had attempted to manufacture the confusion. The other files, especially the ones from Mr. Roberts' office, did not present as much of a problem and contained a high percentage of relevant information.

5. On the second day of plaintiffs' 4½–day inspection, the assistant for defendant indicated he wanted to ship the documents to Washington. Plaintiffs' counsel expressed concern and wanted the documents permanently stamped to make sure all documents selected would, in fact, be copied. Defendant refused. The parties reached a compromise and hired a local independent contractor to copy the documents. After copying 11,000–12,000 pages, the contractor sent the documents to plaintiffs and defendant. Defendant did not make any arrangements to review the documents prior to the independent contractor's shipping them to plaintiffs.

6. Within a few weeks of receiving the documents, defendant discovered that several privileged documents had been inadvertently produced. Defendant immediately contacted plaintiffs and requested their return but plaintiffs refused.

## Evidence as to the Crime and Fraud Exception

In support of its claim that defendant has forfeited any privilege to the Roberts letter because legal advice was sought in the furtherance of a crime or fraudulent scheme, plaintiffs only submit the letter itself as evidence. The letter reveals that Roberts had apparently submitted an article to the general counsel requesting an opinion on how it might affect resale price maintenance. The attorney responded with his legal advice. At oral argument, plaintiffs argued that in 1985 and 1986 defendant used a firm to conduct a public opinion poll of its dealers in order to accumulate complaints which it could then use to justify a change in its marketing policy in order to institute an illegal price resale maintenance policy.

## Discussion

### I. Inadvertent Disclosure

The attorney-client privilege encompasses more than communications by the client to the attorney and includes an attorney's legal advice pursuant to a client's request. "Because the privilege protects the substance of communications, it may also be extended to protect communications by the lawyer to his client, agents, or superiors or to other lawyers in the case of joint representation, if those communications reveal confidential client communications." *United States v. (Under Seal)*, 748 F.2d 871, 874 (4th Cir.1984), *vacated as moot*, 757 F.2d 600 (4th Cir. 1985). An expansive attorney-client privilege may be even more necessary in a modern, technical, society because it encourages full communication and rational decisions and furthers the public interest in observance of complex laws. Notwithstanding its ancient roots and modern necessity, the privilege must be strictly construed to ensure that it does not unduly impinge on the more general, overriding duty of insisting that investigations and decisions be based on truth and reality as opposed to fiction or fabrication. *Id.*, at 875.

■ The proponent of the attorney-client privilege has the burden of proving its applicability. *United States v. Tedder*, 801 F.2d 1437, 1441 (4th Cir.1986). This duty requires the proponent to make a sufficient evidentiary showing, through *in camera* submissions if necessary, in order to explain and prove the basis for the privilege. *United States v. (Under Seal), supra*, at 876. The procedure is slightly different when a document has been voluntarily disclosed and the proponent of the privilege seeks to show the disclosure was inadvertent. The party alleging disclosure must prove that fact. The proponent of the privilege then must not only prove the disclosure was inadvertent but also has the burden of persuading the Court that the privilege has not been waived. *Hartford Fire Ins. Co. v. Garvey*, 109 F.R.D. 323 (N.D. Cal.1985). In this case, the documents were clearly disclosed. Therefore, defendant bears the burden on the inadvertency and waiver issues.

■ The essence of the attorney-client privilege lies in the confidentiality of the information. Disclosure which is inconsistent with maintaining this confidentiality waives the privilege not only as to the specific communication but to other communications relating to that same subject matter. *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir.1982); *In re Grand Jury Proceedings*, 727 F.2d 1352, 1356 (4th Cir.1984). Furthermore, the privilege may be lost even by inadvertent disclosure when a person fails to take affirmative action and institute reasonable precautions to ensure that confidentiality will be maintained. Failure to take action and precautions will be imputed to the client in determining his intent or understanding with respect to confidentiality. *In re Grand Jury Proceedings, supra*, at 1356; *Hartford Fire Ins. Co. v. Garvey, supra*, at 329–30 (inadvertent disclosure may waive privilege-collecting cases).

■ Inadvertent disclosure of an otherwise privileged document does not as a matter of law preclude a finding of waiver. It is merely one of the factors to be considered. *Clady v. County of Los Angeles*, 770 F.2d 1421, 1433 (9th Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 1516, 89 L.Ed.2d 915 (1986). Generally, inadvertent production of documents pursuant to a Rule 34, Fed.R.Civ.P., request waives any privilege, especially when no special efforts were made to ensure confidentiality. *O'Leary v. Purcell Co., Inc.*, 108 F.R.D. 641, 646 (M.D.N.C.1985)–(collecting cases); *Ranney-Brown Distributors v. E.T. Barwick*, 75 F.R.D. 3 (S.D.Ohio 1977). However, in extraordinary situations such as expedited discovery or massive document exchanges, a limited inadvertent disclosure will not necessarily result in a waiver. *Transamerica Computer v. Intern. Business Machines*, 573 F.2d 646 (9th Cir.1978); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103 (S.D.N.Y. 1985); *Kansas-Nebraska Natural Gas v. Marathon Oil Co.*, 109 F.R.D. 12 (D.Neb. 1985).

■ In determining whether a document has lost its privilege through inadvertent disclosure, the Court may consider the following factors: (1) The reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production; (2) the number of inadvertent disclosures; (3) the extent of the disclosure; (4) any delay and measures taken to rectify the disclosures; (5) whether the overriding interests of justice would or would not be served by relieving a party of its error. *Hartford Fire Ins. Co. v. Garvey, supra*, at 332; *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103, 105 (S.D.N.Y.1985); *see In re Subpoenas Duces Tecum*, 738 F.2d 1367 (D.C.Cir.1984)–(limited waivers of work product protection).[1]

■ Turning to the instant case, defendant says that producing virtually all its

---

1. Because of the different basis between the attorney-client privilege and work product protection, *Chubb Integrated Systems v. National Bank of Wash.*, 103 F.R.D. 52, 63 (D.D.C.1984), these factors necessarily may not produce the same result as applied to each doctrine.

files for inspection was not a tactic designed to overwhelm plaintiffs but rather serves to reduce discovery disputes by letting the opponent determine what is relevant. Therefore, defendant claims it could not reasonably be expected to have taken more precautions under these circumstances. It points out that there were only 20 disclosures out of 12,000 pages copied. Plaintiffs, on the other hand, allege that defendant was trying to overwhelm them by using a document dump and should not now be rewarded for the consequences of its actions. They further contend that the inadvertent disclosure of twenty documents itself demonstrates inadequate precautions and that this case does not involve 100 file drawers of documents, but only those in Mr. Roberts' office.

Because the attorney-client privilege is itself strictly construed, the Court will likewise stringently apply the above factors in deciding whether inadvertent disclosure amounts to a waiver of the privilege. As a result, while it finds the precautions commendable, they are not sufficient. Although the document production here was massive (12,000 pages copied), defendant was not under any severe time constraints. It could have insisted on an additional review, such as after the documents were reproduced by the independent copier prior to their being shipped to plaintiffs. Indeed, had defendant's counsel done the copying, they would have followed this procedure. It is unfortunate defendant's lead counsel suffered a health problem, but nothing in the record shows plaintiffs to be guilty of overreaching or other cognizable unfairness. When large numbers of documents are involved, a post-designation review may likely be necessary.

Next, the extent of the relevant document production does not necessarily encompass the entire discovery in a case. Rather, the pertinent area of inquiry concerns the sources of the disclosed documents, and whether adequate precautions were taken as to them. Here, all the documents came from Mr. Roberts' office. However, the Court has not been advised as to the number of documents which were reviewed from that location or the time needed for review. A large number of inadvertent disclosures in comparison to the number of documents reviewed shows lax, careless, and inadequate procedures.[2] *Eigenheim Bank v. Halpern*, 598 F.Supp. 988 (S.D.N.Y.1984)–(1 of 30 requested, and it was inadvertently produced in other litigation). It would seem that having an attorney and a legal assistant check those files should have been sufficient. However, without knowing the percentage of inadvertent disclosures compared to total documents and withheld documents, the Court cannot say the procedure here was not lax or inadequate, remembering defendant bears the burden on the issue. Finally, the document on its face clearly reveals it likely contains privileged matter. There appears to be little reason why it was not identified as privileged. Mere inadvertence, standing alone, is not sufficient to counter the strong policy that disclosure constitutes waiver.

An examination of the other factors also support a finding of waiver. While defendant made a fairly quick discovery of the inadvertent disclosures and tried to retrieve them, this is the only factor in defendant's favor. Even as to it, there is no showing the action was truly timely to prevent disclosure had plaintiffs returned the documents as requested. In any event, the documents have, at least by now, lost all of their confidentiality. A limited disclosure

**2.** *Liggett Group, Inc. v. Brown & Williamson Tob. Co.,* 116 F.R.D. 205 (M.D.N.C.1986)–(extensive discovery but document search only involved one box and no effort made to review after designation but before copying); *O'Leary v. Purcell Co., Inc.,* 108 F.R.D. 641 (M.D.N.C.1985)–(no evidence that attorneys took precautions before handing over document). Contrast *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., supra,* (22 documents inadvertently disclosed, 3000 pages copied, and 16,000 pages inspected, adequate precautions); *Kansas-Nebraska Natural Gas v. Marathon Oil Co.,* 109 F.R.D. 12 (D.Neb.1985)–(one document out of 75,000 justifies finding of non-waiver even in absence of description of precautionary procedures).

resulting from glancing at an open file drawer or designating documents for copying may not justify a finding of waiver when the party does not know the essence of the document's contents. *Chubb Integrated Systems v. National Bank of Wash.*, 103 F.R.D. 52, 63 (D.D.C.1984); *Ranney-Brown Distributors v. E.T. Barwick*, 75 F.R.D. 3, 6 (S.D.Ohio 1977). However, when disclosure is complete, a court order cannot restore confidentiality and, at best, can only attempt to restrain further erosion. Therefore, at a minimum, such an order requires a very strong showing with respect to the other factors, which defendant has not made. *See Hartford Fire Ins. Co. v. Garvey, supra,* at 330. Finally, the Court sees no special circumstance which justifies relieving defendant from its error.

 Even though defendant has not satisfied the rigorous showing necessary to overcome waiver by inadvertent disclosure as to the disclosed document, the Court still must determine the extent of the waiver. Plaintiffs claim the waiver should cover all communications of the same subject matter such as the five additional documents which it seeks. The Court disagrees. When a document is inadvertently produced it necessarily loses its actual confidentiality and, therefore, only in special cases should a court attempt to somehow resurrect the secret by a court order limiting further exposure. The same is not true for related but still confidential matters. A ruling of no waiver will maintain confidentiality which is the main purpose of the privilege. Therefore, a party attempting to show inadvertent disclosure faces a reduced standard when the issue is whether communications related to the disclosed document should be deemed waived as well. The general rule that a disclosure waives not only the specific communication but also the subject matter of it in other communications is not appropriate in the case of inadvertent disclosure, unless it is obvious a party is attempting to gain an advantage or make offensive or unfair use of the disclosure. In a proper case of inadvertent disclosure, the waiver should cover only the specific document in issue. *See Standard Chartered Bank v. Ayala Intern. Holdings*, 111 F.R.D. 76 (S.D.N.Y. 1986); *First Wisconsin Mortg. v. First Wisconsin Corp.*, 86 F.R.D. 160, 173–74 (E.D.Wisc.1980); *Burlington Industries v. Exxon Corporation*, 65 F.R.D. 26, 45–46 (D.Md.1974)–(disclosures during settlement restricted to actual communications and not subject matter in order to encourage settlements). This ruling limits the risk to parties in major discovery cases and still makes them, and not the Court, accountable for maintaining confidentiality. In this case, the Court finds defendant's procedures adequate to preclude a finding of waiver except as to the Roberts letter itself which has already been fully disclosed.

## II. Crime-Fraud Exception to the Privilege

 Plaintiffs next allege that the Roberts letter is not privileged because it is subject to the crime and fraud exception to the attorney-client privilege. Communications otherwise protected by the attorney-client privilege lose their protection if the lawyer is consulted in furtherance of a continuing or contemplated crime, fraud, or other misconduct. *Union Camp Corporation v. Lewis*, 385 F.2d 143 (4th Cir.1967); [3] *In re Sealed Case*, 754 F.2d 395 (D.C.Cir. 1985); *In re Grand Jury Subpoenas Duces Tecum*, 773 F.2d 204 (8th Cir.1985). Courts have extended coverage of this exception to the attorney-client privilege beyond instances of fraudulent or illegal conduct and have applied it to business litigation such as patent, antitrust, or securities matters, and it may even extend to non-business torts. *Coleman v. American*

---

**3.** The Fourth Circuit has not determined whether to apply the crime, fraud or other misconduct exception to attorney's work product. *Duplan Corp. v. Deering Milliken, Inc.,* 540 F.2d 1215 (4th Cir.1976). Nor has the Eighth Circuit. *In re Grand Jury Subpoenas Duces Tecum,* 773 F.2d 204 (8th Cir.1985). Other circuits have applied it. *In re Sealed Case,* 754 F.2d 395, 399 n. 4 (D.C. Cir.1985); *In re International Systems and Controls Corp., etc.,* 693 F.2d 1235 (5th Cir. 1982); *In re Special September 1978 Grand Jury,* 640 F.2d 49, 67 (7th Cir.1980).

*Broadcasting Companies, Inc.,* 106 F.R.D. 201, 207–08 (D.D.C.1985); *See Duplan Corp. v. Deering Milliken, Inc.,* 540 F.2d 1215, 1220 (4th Cir.1976)–(referring to it as "the tort, fraud, or crime exception"). In this case, plaintiffs raise the exception—alleging defendant has committed antitrust violations and implicate by innuendo that perhaps criminal acts might be involved.

Before proceeding, plaintiffs are required to make a *prima facie* showing that the legal advice of the Roberts letter was obtained in furtherance of illegal activity or misconduct. In order to establish a *prima facie* basis, a party must provide more than mere allegations. *In re International Systems and Controls Corp., etc.,* 693 F.2d 1235 (5th Cir.1982). On the other hand, a party need not prove the actual existence of crime, fraud, or other misconduct. *In re Berkley & Co., Inc.,* 629 F.2d 548 (8th Cir.1980); *In re A.H. Robins Co., Inc.,* 107 F.R.D. 2 (D.Kan.1985). In the Fourth Circuit, a party must present just so much evidence as to "subject the opposing party to the risk of non-persuasion if the evidence as to the disputed fact is left unrebutted." *Duplan Corp. v. Deering Milliken, Inc., supra,* at 1220; *In re Grand Jury Subpoenas dated Dec. 18, 1981, etc.,* 561 F.Supp. 1247, 1254 (E.D.N.Y. 1982). While such a showing may justify disclosure, it does not compel it. *Duplan Corp., supra,* at 1220.

A mere speculative nexus or even coincidences between different pieces of evidence does not establish a *prima facie* basis for the exception. *In re Grand Jury Subpoenas Duces Tecum,* 798 F.2d 32 (2d Cir. 1986); *In re Grand Jury Subpoenas Duces Tecum, supra,* 773 F.2d 204 (attorneys failing to provide two documents out of 800

is too speculative to establish exception). In *Duplan Corp., supra,* the court found settlement of a patent litigation by a party, which previously had favorable legal advice that it might prevail, to be, without more, insufficient to establish that the settlement was collusively entered into with anti-competitive intent. *Duplan Corp., supra,* at 1221. On the other hand, where there was a *foundation in fact* for a conclusion that defendant misrepresented the nature and safety of a birth control product, ignored mounting unfavorable evidence of harm, relied on invalid studies to refute the dangers, and attempted, with counsel, to devise strategies to cover up those responsible or to lessen liability, then a *prima facie* case was established for purposes of examining the documents *in camera* to determine their relevancy. *In re A.H. Robins Co., Inc., supra.*

In the instant case, plaintiffs' proof of fraud or misconduct suffers from more than speculation. Plaintiffs fail to show a nexus in time. The timing of the alleged fraud is critical. The moving party must show the client was engaged in or planning misconduct at the time he seeks the advice of counsel. The fraud or crime exception does not apply if the fraud occurred subsequent to the advice and that fact alone will not support further inquiry. *Pritchard-Keang Nam Corp. v. Jaworski,* 751 F.2d 277, 281 (8th Cir.1984). In the instant case, the 1982 Roberts letter preceded by 3 to 4 years the use of a marketing report to allegedly illegally change defendant's marketing policy. Plaintiffs utterly fail to establish any nexus between the letter and the subsequent actions except by innuendo.[4]

---

4. The Court has considered the disputed document in making this determination. There is some question whether the Court should consider the disputed privileged documents in making its determination as to whether there has been crime, fraud, or other misconduct. Some courts hold the documents should be considered and others exclude them. *Union Carbide Corp. v. Dow Chemical Co.,* 619 F.Supp. 1036, 1052–53 (D.C.Del.1985)–(collecting cases); *In re Sealed Case,* 676 F.2d 793, 815 n. 80 (D.C.Cir.1982)–(in appropriate cases disputed documents may be

considered); *In re Grand Jury Subpoenas Duces Tecum,* 798 F.2d 32 (2d Cir.1986)–(insufficient proof considering either the affidavits alone or the affidavits and the actual document); *United States v. Horvath,* 731 F.2d 557 (8th Cir.1984)–(4-week trial plus *in camera* hearing on disputed material).

The Court concludes that whether a party must establish its *prima facie* case entirely on independent evidence will vary in accordance with the situation. Where a party does not

In conclusion, while plaintiffs are required to show that the communication in question was made in furtherance of some misconduct, they have established at most some distant speculative nexus between the communication and the alleged misconduct. This is not enough. Since plaintiffs have failed to establish a *prima facie* case as to the Roberts letter, their motion to compel production of five additional documents will be denied as well.

IT IS THEREFORE ORDERED that defendant's motion for a protective order requiring plaintiffs to return all copies of the inadvertently produced disputed documents and an order prohibiting plaintiffs from using the information contained in such documents for depositions, trial or other purposes, is denied, except that defendant need not divulge any other related communications which still retain their privilege and plaintiffs should return those documents and all copies, which they previously agreed to do.

IT IS FURTHER ORDERED that plaintiffs' motion to compel production of additional documents is denied.

possess the documents, it must present enough evidence to ensure the court that it is not requesting an *in camera* inspection in order to have the Court conduct its fishing expedition. Also the issues at stake may make a difference such as whether the case is criminal or civil. However, if the documents are already fully disclosed, the Court sees no reason for not considering them along with any other evidence which the movant wishes to present.