**BUD ANTLE, INC., Castle & Cooke Techniculture, Inc., and Castle & Cooke, Inc., Plaintiffs,**

v.

**GROW–TECH INC. of California and Gary R. Hartman, Defendants.**

**No. C–89–4029 DLJ(FW).**

United States District Court, N.D. California.

May 21, 1990.

J. Suzanne Siebert of Majestic, Parsons Siebert & Hsue, San Francisco, Cal., for plaintiffs.

Ernest M. Anderson, of Eckhoff, Hoppe, Slick, Mitchell & Anderson, San Francisco, Cal., for defendants.

## DISCOVERY ORDER

FREDERICK J. WOELFLEN, Chief United States Magistrate.

Plaintiffs' Motion for Protective Order and Defendants' Counter–Motion for Production of Documents came on for hearing on May 18, 1990. J. Suzanne Siebert appeared on behalf of plaintiffs, and Ernest M. Anderson appeared on behalf of defendants. After having considered the memoranda submitted in support of and in opposition to this motion, and having heard the argument of counsel and good cause appearing therefor, IT IS HEREBY ORDERED that plaintiffs' motion and defendants' counter-motion are DENIED. This ruling is based upon the court's findings as set forth below.

## INTRODUCTION

This case involves an action for infringement of two patents: Dedolph U.S. Patent No. 4,176,355 ('355) and Dedolph U.S. Patent No. 4,215,513 ('513). Plaintiffs seek an injunction as well as damages in an amount not less than a reasonable royalty.

Plaintiff Bud Antle, Inc. is a California corporation operating out of Salinas, and is a wholly owned subsidiary of plaintiff Castle & Cooke, Inc., a Hawaii corporation. Through its sublicensee Castle & Cooke Techniculture, Inc. plaintiffs market "spongy rooting media" in the United States pursuant to patents '355 and '513. "Spongy rooting media" is apparently a special kind of media used for growing and/or transporting plants. Defendant Grow–Tech, Inc. is a California corporation with its principal place of business in Watsonville, and defendant Gary Hartman is allegedly the president of Grow–Tech, Inc.

Plaintiffs claim that the defendants have infringed the patents by making, using and/or selling spongy rooting media and an array of rooting media within this district without authority to do so. Plaintiffs also claim that defendants have continued to infringe these patents despite having been notified on several occasions in writing within the last six years of the infringement.

Defendants assert that both patents are invalid, and, in any event, not infringed. Defendants further assert that the patents were obtained by fraud on the Patent Office. Specifically, defendants contend that their rooting medium are not covered by the claims asserted as being infringed. Defendants claim that their rooting media is not sold in the same array called for by the '513 patent, and that, in merely following the teaching of the prior art, it does not have the characteristics called for by the '355 patent.

Plaintiffs' motion revolves around an allegedly privileged letter which plaintiffs claim they inadvertently delivered to defendants during production of numerous documents. Plaintiffs move for the return of the letter, and for a protective order as to its use in this litigation.

Defendants contend: 1) that the letter is not privileged, 2) that if it is privileged, the privilege has been waived due to its disclosure, and 3) the privilege has also been waived due to the "crime-fraud" exception to the attorney-client privilege. Defendants have also counter-moved for an order directing plaintiffs to produce all documents they claim are privileged because they too may contain information as to this "fraud."

## BACKGROUND

The basic chronology of events for the purposes of the motion and counter-motion is as follows:

On January 29, 1990 plaintiffs served a written response to defendants' first request for production of documents. In that response, plaintiffs stated that they would produce the requested documents for defendants' inspection on January 30, 1990. Plaintiffs also made a general objection to

producing privileged documents, and stated they would provide defendants with a privilege log of documents withheld.

The exact number of documents reviewed by plaintiffs' counsel Ms. Siebert in preparation for defendants' inspection is not clear, but it appears to have been approximately 6000. Between 2500 and 3000 pages of non-privileged documents were made available for review.

On January 30, 1990 defendants' counsel Mr. Anderson began his inspection of documents at the offices of plaintiffs' counsel, selecting certain documents to be copied. Among the documents was a letter dated April 3, 1978 (the "Letter") from attorney William Michael Hynes, outside patent counsel, to June Takafuji, assistant general counsel of plaintiff Castle & Cooke, Inc. This Letter was stapled to the back of a U.S. patent. Upon discovering the Letter that day, Mr. Anderson took notes regarding its contents and chose it for copying.

The next day Mr. Anderson returned to inspect more documents. He declares that he asked Ms. Siebert whether she had inspected all the documents that had been produced for inspection, and she said she had. On February 1, 1990, Mr. Anderson prepared a memorandum to his file about the Letter, and also informed his clients about the Letter and his view of its importance to the lawsuit.

Mr. Anderson continued his inspection of documents on February 1, 2 and 6. After the completion of his inspection of documents, approximately 975 documents were selected to be copied. The documents were sent out for copying by NightRider Overnight Copy Service by Ms. Siebert's office. The copies, together with the invoice of the copy service, were delivered to Mr. Anderson on or about February 8, 1990.

On March 19, 1990 Ms. Siebert presented Mr. Anderson with a list of privileged documents. On March 20, Mr. Anderson noted that the Letter was identified on the list. He contacted Ms. Siebert and informed her that the Letter had already been produced. Ms. Siebert informed Mr. Anderson that this was a mistake and asked for the return of the Letter. Mr. Anderson refused to return the Letter on the grounds that any privilege thereto had been waived by its production and release of the information therein to Mr. Anderson's client, together with Mr. Anderson's opinions and analysis. On April 16 and 17, 1990 via letter and phone call, Ms. Siebert again entreated Mr. Anderson to return the Letter. Mr. Anderson again refused.

## DISCUSSION

In deciding this motion, the court has before it the following questions: 1) is the letter privileged? and 2) if so, has that privilege been waived?

### I. *Privilege*

Plaintiffs have asserted two grounds for finding that the Letter is privileged: the attorney-client privilege, and the work product doctrine.

### A. Attorney–Client Privilege

The Letter was generated on April 3, 1978 by plaintiff Castle & Cooke's outside patent attorney, William H. Hynes. Apparently, in 1976 Castle & Cooke acquired a subsidiary which was a general partner in a limited partnership called Salinas Transplants. According to plaintiffs, the purpose of the letter was to render an opinion on, among other things, patent properties held by Salinas transplants. The opinion was based on "voluminous materials in the form of Salinas Transplants files" delivered from Castle & Cooke's assistant general counsel. (Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Protective Order p. 5) The patent properties reviewed fell into three categories: 1) patent properties which must be necessarily licensed from others than Dedolph and Gravi–Mechanics, 2) patent properties licensed by Salinas Transplants from Gravi–Mechanics, and 3) so called "Future Inventions" developed during the term of Development Agreement by both Dedolph and others.

It should be noted that the two patents involved in the present litigation had not

yet been issued when the Letter was written. Rather, the inventions were the subject of two patent applications before the Patent Office that later issued as the two patents involved in this suit. The two patent applications involved inventions by Dr. Richard R. Dedolph under a Development Agreement in which Salinas Transplants was granted licenses to the patents that eventually issued. The Letter devoted much analysis to the status and potential value and enforceability of the two applications.

After having reviewed the Letter, the court finds that it contains mixed facts and legal opinions, much of which have nothing to do with the patents at issue in the current litigation. A review of pages 11–18 of the Letter, however, shows a discussion of the potential enforceability of what are now patents '355 and '513 should they issue. Therein, the patent attorney, Mr. Hynes, discusses the status of the patent applications now at issue in this lawsuit, and issues his opinions and recommendations as to whether those applications are infringing. The court finds that the Letter was primarily concerned with giving legal guidance to the client and is thereby protected by the attorney-client privilege. *Jack Winter Inc. v. Koratron Co., Inc.*, 54 F.R.D. 44, 46 (N.D.Cal.1971); *see also Union Carbide Corp. v. Dow Chemical Co.*, 619 F.Supp 1036, 1046–47 (D.Del.1985).

## B. Work product

█ The work product doctrine requires that "there must be an identifiable prospect of litigation (i.e. specific claims that have already arisen) at the time the documents were prepared." *Fox v. California Sierra Financial Services*, 120 F.R.D. 520, 525 (N.D.Cal.1988). The court finds that no such identifiable prospect of litigation existed at the time the Letter was prepared. Written in 1978, it was prepared before the patents which are the subject of this litigation ever issued, and allegedly before the defendants had even started their business. (Opposition to Motion for Protective Order, etc. p. 20) Accordingly, the work product doctrine does not apply.

## II. *Has the Privilege Been Waived?*

Defendants have alleged waiver on three grounds: 1) plaintiffs' failure to claim the privilege until well after the Letter was produced, 2) plaintiffs' production of the Letter to defendants, and 3) the "crime-fraud" exception to the attorney-client privilege.

### A. Failure to claim the attorney-client privilege

█ Defendants contend that plaintiffs' right to assert the attorney-client privilege has been waived because no effective claim of privilege was made until six weeks after production of the letter, when plaintiffs produced a privilege log. Prior to that time, only a generalized claim of privilege had been made in plaintiffs' written responses to defendants' document requests. Because this was a generalized claim of privilege, defendants contend that it is in violation of Local Rule 230–5, which provides that no generalized claims of privilege shall be made. Northern District of California Local Rules, Local Rule 230–5.

Plaintiffs argue that before document production (in the written responses) and during document production defense counsel was advised that certain documents had been withheld on attorney-client privilege and confidentiality grounds, and was informed that a list of such documents was being prepared. Furthermore, Ms. Siebert contends that the parties had tacitly agreed on the submission of the privileged list subsequent to the inspection of documents. She bases this on the fact that on February 11, 1990 Mr. Anderson made available to her for inspection certain documents, and that a list of the privileged documents withheld was not submitted until February 14, 1990. That list was updated on March 20, 1990.

█ While Local Rule 230–5 states that no generalized claims of privilege shall be made, it does not provide that a generalized claim is a waiver of the privilege. Non-production of the logs in a timely manner by plaintiffs may prove to have been harmful insofar as defendants were not provided

with a means by which to identify privileged documents which may have been accidently produced. However, I do not believe that the failure to timely provide the logs constitutes a waiver of the privilege, and find accordingly.

### B. Waiver Through Inadvertent Production

■ In *Hartford Fire Insurance Co. v. Garvey*, 109 F.R.D. 323 (N.D.Cal.1985), Magistrate Claudia Wilken of this court sets forth a thorough analysis of the law regarding waiver of the attorney-client privilege through inadvertent production of documents. In that opinion, Magistrate Wilken adopts the standard set forth in the case of *Lois Sportwear, U.S.A., Inc., v. Levi–Strauss & Co.*, 104 F.R.D. 103 (S.D. N.Y.1985), to determine whether waiver has occurred. This involves an examination of the following elements: 1) the reasonableness of the precautions to prevent inadvertent disclosure, 2) the time taken to rectify the error, 3) the scope of the discovery, 4) the extent of the disclosure, and 5) the "overriding issue of fairness." *Hartford Fire Insurance Company v. Garvey*, 109 F.R.D. at 332. These elements address the degree of care taken by the producing party to protect the confidentiality of the document, as well as the extent to which the confidentiality has been breached by the production.

■ Using the above analysis, the court finds the following:

1. Plaintiffs did not take reasonable precautions to prevent disclosure of privileged documents. This is indicated by the following actions: a) plaintiffs' failed to present a privilege log to defendants until six weeks following the production of the documents, thus ensuring that defendants would have no way of immediately identifying any privileged materials which might have inadvertently been produced; b) plaintiffs failed to detect disclosure of the letter when the documents were first segregated for production, and again after Mr. Anderson segregated out the documents he wanted copied, for which plaintiffs' counsel took responsibility. Furthermore, after the documents were initially produced, but before copying, Mr. Anderson asked Ms. Siebert if she had reviewed the documents, and she replied in the affirmative.

2. The time taken for plaintiffs to rectify their error is a critical element in this case. While plaintiffs acted to recover the Letter as soon as they found it had been inadvertently produced, this was not until *six weeks* after production. By that time, the letter had been thoroughly analyzed by defendants' attorney, and the client had been informed of its contents.

3. The scope of discovery in this case was fairly broad, encompassing the initial review of 6000 documents, 2500 to 3000 of which were produced for Mr. Anderson's inspection.

4. For disclosure purposes, the court looks to whether the contents of the document were fully disclosed, and whether copies of the documents were actually turned over before the privilege was asserted. *See Hartford Fire Insurance Co. v. Garvey, supra,* at 330.

Here, the Letter was fully disclosed in that at the time it was first discovered on February 1, 1990 Mr. Anderson read its contents and took notes. Soon thereafter, the Letter was apparently given a thorough analysis, and Mr. Anderson's client was informed of its existence and possible legal implications. By February 8, 1990 Mr. Anderson had been provided with a copy of the Letter, six weeks before the privilege would be asserted. I must therefore find that there was a complete disclosure of the Letter to defendants.

5. Finally, the court addresses the "overriding issue of fairness." Without addressing the claims of fraud set forth by defendants, I believe that fairness dictates that the privilege must be waived. The Letter was thoroughly disclosed to defendants in good faith by Mr. Anderson at a time he was under no awareness that at some future date the document would be declared privileged. Defendants have analyzed the Letter, have possibly disclosed it to experts, and have indicated a strong reliance on it for purposes of their defense

in this lawsuit. Under the circumstances, the bell has already been rung, and the court cannot now unring it by denying defendants access to the Letter.

Accordingly, the court finds that, regardless of whether plaintiffs' production of the Letter was inadvertent, the elements discussed above in the name of fairness demand that plaintiffs' motion be denied. The court thus finds it unnecessary to address the "crime-fraud" exception to the attorney-client privilege. Defendants' cross-motion for production of all of plaintiffs' privileged documents is also denied.

IT IS SO ORDERED.