HARMONY GOLD U.S.A., INC, a corporation; and Playmates Toys, Inc., a corporation, Plaintiffs,

v.

FASA CORPORATION, a corporation; and Virtual World Entertainment, a corporation, Defendants.

No. 95 C 2972.

United States District Court, N.D. Illinois, Eastern Division.

Nov. 6, 1996.

Mark Van Buren Patridge, Pattishall, McAuliffe, Newbury, Hillard & Geraldson, Chicago, IL, Jack D. Samuels, Los Angeles, CA, for Plaintiffs.

Karen Beth Ksander, Sonnenschein, Nath & Rosenthal, Chicago, IL, Laura R. Petroff, Sonnenschein, Nath & Rosenthal, Los Angeles, CA, for Defendants.

## MEMORANDUM ORDER

BOBRICK, United States Magistrate Judge.

Before the court is HARMONY GOLD'S MOTION TO EXCLUDE EVIDENCE IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, AND FOR A PROTECTIVE ORDER. Specifically, plaintiffs Harmony Gold U.S.A., Inc. and Playmates Toys, Inc. ("Harmony Gold"), seek to recover three 'privileged' documents they claim were inadvertently produced to defendants FASA Corporation and Virtual World Entertainments ("FASA"), and to preclude them from being used as exhibits in support of Defendants' Motion For Judgment On The Pleadings. This case involves claims of copyright infringement, unfair competition and conspiracy.

## I. BACKGROUND

On March 16, 1995, FASA served Harmony Gold with a request for production of documents. (Memorandum in Support of Harmony Gold's Motion to Exclude Evidence in Support of Defendant's Motion for Judgment on the Pleadings, and for a Protective Order) ("Pl.'s Mem. In Supp.," p. 2). On April 23, 1996, in response to FASA's Request To Produce, Harmony Gold permitted FASA to inspect various documents at Harmony Gold's offices in Los Angeles, California.[1] (Defendant's Memorandum in Opposition to Harmony Gold's Motion to Exclude Evidence in Support of Defendant's Motion for Judgment on the Pleadings, and for a Protective Order) ("Def.'s Mem. In Opp'n, p. 2"). Included among those documents that FASA inspected were the three documents that form the subject matter of the instant motion, namely: (1) Document Bates Number HG03733, a communication between Harmony Gold's counsel and Harmony Gold's Japanese attorneys ("Document One"); (2) Document Bates Number HG000362, a communication between Harmony Gold's counsel and Harmony Gold's Japanese attorneys ("Document Two"); and (3) Document Bates HG00285–00286, a communication between Harmony Gold's president and Harmony Gold's counsel ("Document Three"). (Pl.'s Mem. In Supp., p. 3). After inspecting the documents, FASA requested copies of all the documents produced by Harmony Gold. The documents were placed into a box for later duplication. (Def.'s Mem. In Opp'n, p. 4). Thereafter, on May 14, the box of documents was released by Harmony Gold and turned over to an independent photocopying company that had been selected by FASA. The box containing the originals of the three Documents, together with the copies of same, were subsequently returned to FASA at its Chicago office. (Id.)

---

1. Harmony Gold first removed 78 documents it claimed were protected by the attorney-client privilege, and designated them as such on its Privilege Log.

On May 14, 1996, FASA used Documents One, Two, and Three as exhibits in support of its motion for Judgment On The Pleadings or, in the alternative, For Summary Judgment. (Pl.'s Mem. In Supp., p. 3). On June 27, 1996, Harmony Gold filed the instant motion seeking recovery of Documents One, Two, and Three.

In support of its motion, Harmony Gold asserts that Documents One, Two, and Three are privileged and, moreover, were inadvertently disclosed. Harmony Gold claims that it reviewed over 25,000 pages of documents before releasing them for photocopying, and removed 78 documents which were protected by the attorney-client privilege.[2] (Pl.'s Mem. In Supp., p. 3). Harmony Gold claims that it first learned that Documents One, Two, and Three were inadvertently disclosed on May 14, 1996, when FASA cited to those documents in its Motion For Judgment On The Pleading, Or Alternatively For Summary Judgment. (Pl.'s Mem. In Supp., p. 3).

FASA, in its responsive Memorandum In Opposition To Harmony Gold's Motion To Exclude, points out, *inter alia*, that on May 28, 1996, almost five weeks after the subject documents had first been produced at Harmony Gold's Los Angeles office, and two weeks after the documents were cited by FASA in its Reply Memorandum In Support Of Its Motion For Judgment On The Pleadings, did FASA receive from Harmony Gold a letter claiming that it had inadvertently produced Document Three[3] and request its return. (Def.'s Mem. In Opp'n, p. 5). FASA refused to return Document Three, stating that it did not agree that the production was inadvertent and, even if it were, it believed that Harmony Gold had waived its privilege. (Def.'s Mem. In Opp'n, pp. 5–6.). Some two weeks later, Harmony Gold proceeded with the instant motion.

## II. *ANALYSIS*

■ In *ruling on motions involving inadvertent production of claimed privileged documents, the court undertakes a three-part* inquiry. As a threshold matter, the court must determine whether the disputed document is indeed subject to the attorney-client privilege. If the document is not privileged, the inquiry ends. If the document is privileged, the court must then determine if the disclosure was inadvertent. Lastly, even if the document is found to be protected by the attorney-client privilege and inadvertently produced, the court must, nonetheless, determine whether the privilege was waived.

### A. *Attorney–Client Privilege*

■ The attorney-client privilege shields documents from discovery that reflect communications between a client and her attorney because such communications might contain confidential information about the client. *U.S. v. White*, 950 F.2d 426, 430 (7th Cir.1991). The attorney-client privilege is a narrow one; it only applies within certain carefully described limits. The Seventh Circuit has defined the scope of the privilege: (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection may be waived. *White*, 950 F.2d at 430.

■ The privilege applies to communications both by a client to a lawyer and from a lawyer to a client, *United States v. Defazio*, 899 F.2d 626, 635 (7th Cir.1990). But the legal advice given to the client, or sought by the client, must be the predominant element in the communication; the privilege will not apply where the legal advice is incidental to business advice. *United States v. International Business Machines Corp.*, 66 F.R.D. 206, 212 (S.D.N.Y.1974). As a result, where documents or conversations are created pursuant to business matters, they must be disclosed. *Id.* Where, however, the communications constitute legal advice, or tend directly or indirectly to

---

**2.** Documents One and Two were actually listed on Harmony Gold's Privilege Log. (Pl.'s Reply Mem., p. 3).

**3.** FASA claims that Documents One and Two were mentioned for the first time in the instant motion.

reveal the substance of a client confidence, they are privileged. *United States v. Defazio,* 899 F.2d 626, 635 (7th Cir.1990).

■ FASA claims that Documents One and Two should not be shielded by the privilege for two reasons: First, the communications are between Harmony Gold's in-house counsel and its Japanese counsel, not attorney and client; and second, the communications concern factual, not legal inquiries.[4] (Def.'s Mem. In Opp'n, pp. 7–9). Harmony Gold claims the documents are privileged attorney-client communications; we agree.

We disagree with FASA's contentions and find that Documents One and Two are privileged. As to FASA's first contention, it has long been recognized that communications seeking legal advice between in-house counsel and outside counsel fall within the ambit of the attorney client privilege. *Research Institute For Medicine & Chemistry, Inc. v. Wisconsin Alumni Research Foundation,* 114 F.R.D. 672, 676 (W.D.Wis.1987) *citing Natta v. Zletz,* 418 F.2d 633, 637 (7th Cir. 1969). These communications are essentially between the corporation (Harmony Gold) and its outside counsel (Japanese attorneys), regardless of the legal qualifications of the in-house counsel. *Natta,* 418 F.2d at 637. As to FASA's second contention, we find that Document One deals with an inquiry into the status of written confirmations bearing on copyright ownership; and, Document Two deals with an inquiry into the significance of specific written confirmations regarding copyright ownership. These documents fall within the defined scope of the privilege, and are seen as legal communications, not factual recitations.

### B. *Inadvertent Disclosure*

■ Once the court determines that the document is protected by the attorney-client privilege, it still must determine whether it was inadvertently produced. The party claiming inadvertent disclosure has the burden of proving that the disclosure was truly inadvertent. *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co., Inc.,* 132 F.R.D. 204, 207 (N.D.Ind.1990).

■ Courts have not established a bright-line rule for determining whether a document was inadvertently produced; instead, courts look at the circumstances surrounding the disclosure. *See Golden Valley Microwave Foods, Inc.,* 132 F.R.D. at 207. Standing alone, Harmony Gold's self-serving declarations that their disclosures were inadvertent are insufficient to satisfy its burden. However, in light of the voluminous document production in this case—approximately 25,000 pages [5]—and Harmony Gold's designation of Documents One and Two on its Privilege Log, we find the disclosures to be inadvertent.

### C. *Waiver*

Having determined that the documents at issue are privileged and were inadvertently disclosed, we next must determine whether Harmony Gold had waived the privilege. When determining whether an inadvertent disclosure results in a waiver, three different approaches have been used: (1) a subjective approach; (2) an objective approach; and (3) a balancing test. *Golden Valley Microwave Foods, Inc.,* 132 F.R.D. at 208; *International Digital Systems v. Digital Equipment Corp.,* 120 F.R.D. 445, 448 (D.Mass.1988).

Courts following the subjective approach have concluded that inadvertent disclosure never results in a waiver because, as the word 'inadvertent' implies, there was no intention to waive the privilege. *See e.g. In re Sealed Case,* 120 F.R.D. 66, 72 (N.D.Ill.1988); *Mendenhall v. Barber–Greene Co.,* 531 F.Supp. 951, 954 (N.D.Ill.1982). In contrast, courts espousing the objective approach hold that even if the disclosure was inadvertent, the confidentiality of the document has been breached, thereby destroying the basis for the continued existence of the privilege. *See e.g. Underwater Storage, Inc. v. United*

---

4. As to Document Three, FASA admits that Document Three "... satisfies the essential prerequisites for a privileged document ..." (Def.'s Mem. In Opp'n, p. 6).

5. This is 13,000 more documents than the "massive discovery" described in *Parkway Gallery*

*Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.,* 116 F.R.D. 46, 51 (M.D.N.C.1987), and 11,000 more than the document production in *Golden Valley Microwave, Inc.,* 132 F.R.D. at 207.

*States Rubber Co.,* 314 F.Supp. 546, 548–49 (D.D.C.1970). The last approach, which is the balancing test, does not employ an inflexible rule to determine whether a waiver has occurred; rather; this approach allows the court to analyze each case individually by weighing five factors: (1) the reasonableness of the precautions taken to prevent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness. *Golden Valley Microwave Foods, Inc.,* 132 F.R.D. at 208, *citing Bud Antle, Inc. v. Grow–Tech, Inc.,* 131 F.R.D. 179, 183 (N.D.Cal.1990), *quoting Hartford Fire Ins. Co. v. Garvey,* 109 F.R.D. 323, 332 (N.D.Cal.1985).

█ While there is not a consensus of opinion within this circuit as to which approach is favored, this court chooses to follow the objective approach since we believe it to be a more realistic, as well as practical, means to resolve the problem and issues inherent in the nature and circumstances of an inadvertent disclosure. Under the objective approach it would be an exercise in futility to examine the intentions of the disclosing party, or the adequacy of the discovery precautions, when in fact, once the documents had been disclosed their confidentiality was irretrievably lost.[6] With the loss of confidentiality to the disclosed documents, there is little this court could offer the disclosing party to salvage its compromised position. Accordingly, we must deny plaintiff's motion.

█ Even assuming, *arguendo* that this court applied the balancing test, the privilege would nonetheless be found to have been waived. First, Harmony Gold defends the adequacy of its precautions by asserting that it spent five days reviewing approximately 25,000 documents before turning them over to FASA. (Pl.'s Mem. In Supp., pp. 9–10). We find these precautions, however, patently inadequate even in light of the admittedly large number of documents involved. Harmony Gold needed only to review the box of documents scheduled for photocopying, prior to shipping them for duplication and later to

FASA to have avoided disclosure. Its failure to do so must lead to a finding of inadequacy. *See Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.,* 116 F.R.D. 46, 51 (M.D.N.C.1987). Harmony Gold also contends that the assignment of Documents One and Two to its Privilege Log somehow militates in favor of this court finding that it took adequate precautions. (Pl.'s Reply Mem., p. 3). This court, however, reaches the opposite conclusion. It is axiomatic that a screening procedure that fails to detect confidential documents that are actually listed as privileged is patently inadequate. Moreover, we find Harmony Gold's contention inapposite; if anything, it demonstrates only Harmony Gold's intent to designate Documents One and Two as privileged, nothing more. Lastly, Harmony Gold dragged its feet in taking appropriate corrective action after learning of its inadvertent disclosure.

On May 14, 1996, Harmony Gold learned of its disclosure of Documents One, Two, and Three upon review of FASA's Memorandum In Support of Its Motion For Judgment On The Pleadings. It then spent two weeks, as counsel for Harmony Gold put it, "review[ing] its copy of the produced documents in an attempt to determine how the inadvertent disclosure occurred." (Pl.'s Mem. In Supp., p. 10). On May 28, Harmony Gold finally attempted to rectify the error by sending a letter to FASA requesting the return of the documents. (Id.) When FASA denied this request, Harmony Gold spent another two weeks preparing the instant motion. We find that Harmony Gold's attempt to rectify the error was lax at best. Moreover, even if Harmony Gold had acted expeditiously, FASA had already incorporated Documents One, Two, and Three in its Motion For Judgment On The Pleadings, and, therefore, the disclosure was irremediably complete. The documents had lost all their confidentiality. *See Parkway Gallery Furniture, Inc.* 116 F.R.D. at 51, 52. "When disclosure is complete, a court order cannot restore confidentiality and, at best, can only attempt to restrain further erosion." *Id.* Such an order, at a minimum requires a very

---

**6.** "It seems somehow fictional to confirm the adequacy of the discovery precautions taken when obviously (as manifested by the disclosure)

the precautions, almost by definition, were inadequate." *Golden Valley Microwave, Inc.,* 132 F.R.D. at 208.

strong showing with respect to the other factors, a showing which Harmony Gold has not made. *Id.*

Lastly, the overriding issue of fairness in this case singularly favors a finding of waiver because FASA has relied on the documents in support of its Motion For Judgment On The Pleadings, Or Alternatively For Summary Judgment. *See Bud Antle, Inc. v. Grow–Tech, Inc.,* 131 F.R.D. 179, 183 (N.D.Cal.1990). Just as in *Bud Antle, Inc.,* "the bell has already rung, and the court cannot now unring it by denying [defendant] access to the [document]." *Id.* at 184.

### III. CONCLUSION

Harmony Gold has not satisfied the rigorous showing necessary to overcome waiver by inadvertent disclosure as to Documents One, Two, and Three. We see no special circumstances which justify relieving plaintiffs from the errors of their production. Accordingly, Harmony Gold's Motion To Exclude Evidence In Support Of FASA's Motion For Judgment On The Pleadings, And For A Protective Order is DENIED.

