Charlie JONES, Plaintiff,

v.

**EAGLE–NORTH HILLS SHOPPING CENTRE, L.P., Defendant.**

**No. 06–CIV–161–RAW.**

United States District Court,
E.D. Oklahoma.

Jan. 24, 2007.

Stephan M. Nitz, Schwartz Zweben & Slingbaum, Hollywood, FL, Juliet N. Brennan, Bonds & Matthews Law Firm, Muskogee, OK, for Plaintiff.

Lu Ann Stout, Hiltgen & Brewer, Oklahoma City, OK, for Defendants.

## ORDER

WHITE, District Judge.

Before the Court is Plaintiff's Counsel's Motion to Strike and Remove Privileged E–

Mail Communication Document from the Court File and for Order Prohibiting Admission and Consideration of Same in Deciding the Fees and Costs Issue [Docket No. 53]. Plaintiff's counsel inadvertently forwarded a privileged email to defense counsel on October 24, 2006. Eight minutes later, Plaintiff's counsel realized his mistake and immediately requested that defense counsel delete the document. Defendant's counsel responded that the request was "too late." Defendant's counsel then attached the email as an exhibit to a pleading two months later, on December 29, 2006. Plaintiff's counsel subsequently filed the present motion. Defendant asserts that any privilege has been waived by the inadvertent disclosure of attorney work product.

The subject email was written to a co-counsel and concerned the ongoing saga of the appropriate amount of attorney fees to be awarded following the settlement of this ADA case. The email stated "I knew she was going to go round-and-round and not want to negotiate a number. We need to strategize—the last thing we want is a motion before him that turns into a biased order that all defense attys. there, can throw around."

Plaintiff relies on *Sanner et al. v. The Board of Trade of the City of Chicago, et al.*, 181 F.R.D. 374 (N.D.Ill.1998) to recommend the Court use a balancing test to determine whether the privilege has been waived. Defendant relies on *Genentech, Inc. v. U.S. International Trade Comm.*, 122 F.3d 1409, 1415 (Fed.Cir.1997) to assert that "voluntary disclosure to an adversary of material claimed as work product almost invariably results in waiver."

This Court was initially unhappy with all counsel due to the lack of case law cited from the Tenth Circuit Court of Appeals. This Court soon realized, however, that little relevant case law exists in this circuit on the subject. Consequently, the initial unhappiness is assuaged.

Three primary approaches currently exist to determine whether an inadvertent disclosure constitutes a waiver of privilege. The first approach is called the traditional or strict approach, which holds that an inadvertent disclosure *always* constitutes a waiver of privilege. The second approach is the "no waiver" approach or "subjective intent test." This approach holds that an inadvertent disclosure does not constitute a waiver of privilege without extreme negligence. The third approach is referred to as the "skeptical balancing test," which gives the court discretion in determining whether the inadvertent disclosure results in a waiver. In using such discretion, the court may consider that, in spite of many peoples' thoughts otherwise, even lawyers are human and are capable of making mistakes.

This Court does not agree with the first approach that inadvertent disclosure *always* constitutes a waiver of privilege. This Court believes that privileges are to be taken quite seriously. They exist for good reasons. They should not, therefore, be blithely disregarded. Further, this Court does not subscribe to the balancing test. As with any balancing test, the benefit of flexibility is often overshadowed by the cost of uncertainty. This Court would gravitate more to the side of the "no waiver" approach, based on the idea that a waiver when the client is not aware of an inadvertent disclosure serves only to punish the innocent. *See Mendenhall v. Barber–Greene Co.*, 531 F.Supp. 951, 955 (D.C.Ill., 1982) (... if we are serious about the attorney-client privilege and its relation to the client's welfare, we should require more than such negligence by counsel before the client can be deemed to have given up the privilege.)

Another relevant source on this issue is the Model Rules of Professional Conduct. Model Rule 4.4(b) was adopted by the American Bar Association's House of Delegates in August 2002. That rules states that if a lawyer receives a document the lawyer should know was sent inadvertently, he or she must promptly notify the sender. A review of the exhibits to the motions and responses does not indicate that defense counsel ever notified plaintiff's counsel of the disclosure, undoubtedly because Plaintiff's counsel realized his blunder so quickly. When Plaintiff's counsel informed defense counsel of the disclosure, asking that opposing counsel not read it and delete it, defense

counsel responded that the request was too late and that defense counsel had already read the e-mail. Such a response is largely justified because the email is so short, a reasonable person might not realize it was privileged before reading all of it.

Unfortunately, seemingly little justification exists for Defendant's counsel then appending the privileged email to a court filing. Defendant's counsel claims that her purpose was to show the attempted non-compliance by Plaintiff's counsel with regard to the Court's directives regarding the determination of costs and fees. The Court is somewhat skeptical. Admittedly, the Court's directives in that regard have been evolving and somewhat inarticulate. Plaintiff's counsel could be forgiven for being unsure of the proper manner for complying with the Court's directives. Furthermore, Plaintiff's counsel is ethically bound to seek the best possible outcome for his client. Exploiting uncertainty in legal authority, including even an order of this Court is, in effect, his job.

Likewise, the job of Defendant's counsel may include exploiting mistakes made by opposing counsel. Defendant's counsel committed no articulable ethical transgression in using the subject email. Such action, however, could hardly be described as the bellweather for professional collegiality. Considering that use of the subject email did nothing to strengthen the Defendant's substantive legal position, and served only to potentially denigrate Plaintiff's counsel in the eyes of the Court, the Court believes that the best course of action for Defendant's counsel would have been to refrain from exploiting this particular mistake. Even if not driven by a warm feeling of collegiality, such deference to human fallibility would evince familiarity with the ancient wisdom of: "What goes around comes around." Certainly, such forbearance would be more attuned to the spirit of Model Rule 4.4(b).

Plaintiff's Counsel's Motion to Strike and Remove Privileged E–Mail Communication Document from the Court File and for Order Prohibiting Admission and Consideration of Same in Deciding the Fees and Costs Issue [Docket No. 53] is GRANTED in part and DENIED in part. The Motion to Strike is GRANTED and therefore, Exhibit 5 to Defendant's Objection to Plaintiff's Claims for Attorney Fees, Expert's Fees, Litigation Expenses and Costs [Docket No. 51] is deemed stricken. Plaintiff's request that the document be removed from the court file is DENIED. Plaintiff's request for order prohibiting admission and consideration of same in deciding the fees and costs issue is GRANTED.